The OHIO NATIONAL LIFE
INSURANCE COMPANY,
Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

Nos. 89–3888, 89–3889.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1990.

Decided Dec. 20, 1990.

Joseph M. Fischer, Stuart G. Summers, Ohio Nat. Life Ins. Co., Cincinnati, Ohio, Michael F. Kelleher (argued), John P. McAllister, William F. Hanrahan, Groom & Nordberg, Washington, D.C., for plaintiff-appellee.

Charles M. Greene, U.S. Dept. of Justice, Tax Div., Washington, D.C., Gerald L. Kaminski, Asst. U.S. Atty., Cincinnati, Ohio, Gary R. Allen, Acting Chief, David English Carmack, Robert W. Metzler (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for defendant-appellant.

Before KEITH and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

The United States appeals from a judgment entered in the district court in favor of plaintiff Ohio National Life Insurance Company ("Ohio National"). The district court granted Ohio National the sum of $653,764.17 and statutory interest as presented in the stipulated amount of taxes which it had overpaid during the calendar years 1976, 1977 and 1978. The only question before the district court and on appeal is whether Ohio National's suit to recover the overpaid taxes was timely or was barred by the applicable two year period of limitations. We agree with the district court that the suit was timely brought and accordingly affirm.

I.

On December 23, 1982, the IRS sent Ohio National "Notices of Assessment" of taxes for calendar years 1976, 1977, 1978. Ohio National timely paid the amounts, but filed

a claim for a refund of the taxes on December 28, 1984. The IRS disallowed the claim, sending a statutory "notice of disallowance" to Ohio National on February 5, 1986. *See* 26 U.S.C. § 6532(a); 26 CFR § 301.6532–1(a) (1990). The notice informed Ohio National that it could file suit within two years from the mailing date of the notice of claim disallowance, as provided in section 6532(a). The notice also stated that if the taxpayer had provided a waiver of the notice of disallowance (Form 2297), as permitted under section 6532(a)(3), the period for bringing suit began to run on the date the waiver was filed.

On February 2, 1988, Ohio National filed its complaint pursuant to section 7422 of the IRS Code, which provides for recovery of internal revenue taxes and interest on tax overpayments. The taxpayer contends, therefore, that its February 2, 1988 complaint is timely since it was filed less than two years after the February 5, 1986 notice of disallowance. *See* § 6532(a)(1).

On October 20, 1988, almost nine months into the taxpayer's suit, the IRS informed Ohio National that it had found in its files a "Waiver of Statutory Notification of Claim Disallowance." On December 22, 1988, the IRS filed a motion to dismiss alleging that the taxpayer's suit was jurisdictionally barred since the taxpayer had filed the waiver. Attached to this motion was the waiver form, which the parties agree was *signed* by an agent of Ohio National on July 8, 1985. Although the form was dated July 8, 1985, there is no notation on the document evidencing when or if the form was actually filed.

The waiver produced by the IRS provided that "the filing of this waiver is irrevocable and it will begin the 2–year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail." Although Ohio National admits that an agent executed the document, it vigorously disputes that the document was actually *filed.* If the document was actually filed on or

about the execution date of July 8, 1985, then Ohio National's February 2, 1988 complaint would be time-barred since the limitations period would commence on the filing of that waiver. *See* § 6532(a)(3).

In opposition to the IRS's motion, Ohio National submitted an affidavit from Paul Bergmann, the Ohio National agent who signed the waiver form. Bergmann acknowledged that the signature on the Form 2297 waiver was his own, but he denied any recollection of actually signing or filing the form. He also outlined Ohio National's standard business practice with respect to filing, which included photocopying documents as well as recording the date of filing. Bergmann also stated that Ohio National's files had no record or evidence of the waiver form in question, nor any return receipt from the IRS. The IRS did not file a response to Ohio National's opposition to its motion.

On March 1, 1989, the district court denied the IRS's motion. The district court held that the paucity of evidence as to when the waiver was *filed,* rather than executed, indicated that the period of limitations must be computed from the date of the notice of disallowance rather than the waiver. The district court therefore held that Ohio National's action was timely.

The IRS sought a reconsideration of the order, arguing that the district court erroneously shifted the burden of proof to it on this jurisdictional question. The IRS alleged that the taxpayer must demonstrate when the waiver was filed. The IRS attached to its motion for reconsideration a declaration from Jay Ingram, a revenue agent with the IRS, as well as a copy of a "Form 3198," or "Special Handling Notice." According to Ingram, he was assigned to the Ohio National file, but subsequently transferred the file when his duties were completed. He states that he attached the special handling notice to the file when he transferred the file to his "Group Manager" on or before July 9, 1985.[1] The special handling notice contains

---

1. Ingram states that a special handling notice is required when an administrative file is completed and special handling is necessary, although

nowhere does Ingram state what constitutes "special handling."

the following notation: "Taxpayer signed form 2297 waiver of claim notice. Prior years in court on same issues. CLAIMS ARE DISALLOWED IN FULL." Although this notice also bears no date, the IRS argued that the document, taken with Ingram's declaration, indicates that the waiver was filed on or before July 9, 1985.[2] Based upon this special handling notice, the IRS moved for reconsideration and for an evidentiary hearing on the issue of the filing date of the waiver. The district court denied the motion to reconsider on April 17, 1989. The IRS's subsequent motion to set a trial date on the jurisdictional question was also denied, without an opinion, on May 18, 1989.

On July 17, 1989, the district court entered a judgment against the United States in the amount of $653,764.17, plus statutory interest, for overpayment of federal taxes for tax years 1976, 1977, and 1978. This judgment was entered based upon a stipulation by the parties, but the IRS reserved the right to appeal the earlier adverse jurisdictional judgment. The IRS timely appealed from the July 17, 1989 Order. The sole issue on appeal is whether the district court correctly concluded that the taxpayer's action was not barred by the time limits set forth in section 6532(a).

## II.

Ohio National's complaint asserts subject matter jurisdiction under 28 U.S.C. § 1346(a)(1). Under this provision, a district court has jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." As recently recognized by the Supreme Court, the "spacious terms" of section 1346(a)(1) must be "read in conformity with other statutory provisions which qualify a

taxpayer's right to bring a refund suit upon compliance with certain conditions." *United States v. Dalm,* —— U.S. ——, 110 S.Ct. 1361, 1364, 108 L.Ed.2d 548 (1990).

Ohio National brought suit under one of these companion statutes, 26 U.S.C. § 7422(a), which is nearly identical to section 1346(a)(1) and similarly limits a taxpayer's suit. Language in section 7422(a) is also general and reference must be made again to another provision, section 6532(a), which delineates the prerequisites to a refund suit for taxes wrongfully assessed. Section 6532(a) provides in pertinent part:

§ 6532. **Periods of limitation on suits**

(a) **Suits by taxpayers for refund.—**

(1) **General Rule.—**No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

(2) **Extension of time.—**The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary.

(3) **Waiver of notice of disallowance.** —If any person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2-year period prescribed in paragraph (1) shall begin on the date such waiver is filed.

(4) **Reconsideration after mailing of notice.—**Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun. . . .

---

**2.** Ingram also states that taxpayers are not normally provided a copy of the waiver unless they ask for it. Further, he states that in 1985 it was

not his "practice to stamp the form as 're-ceived.' "

As with *most* periods of limitation involving suits against the sovereign,[3] the prerequisites to suit described in section 6532's "general rule" are jurisdictional.[4] *Johnson v. United States*, 81–1 U.S.T.C. ¶ 9298 (6th Cir.1981) (per curiam) (affirming lower court's ruling that it lacked jurisdiction on account of the taxpayer's failure to file suit within two years); *Daniel v. United States*, 454 F.2d 1166, 1167 (6th Cir.1972) (per curiam) (same). *See also Dalton v. United States*, 800 F.2d 1316, 1319 (4th Cir.1986) (section 6532(a) is a statute of limitations which may divest a court of its subject matter jurisdiction unless time is extended); *Dieckmann v. United States*, 550 F.2d 622, 623–24 (10th Cir.1977) (statute of limitations on wrongful levy suits under section 6532(c) is jurisdictional). Accordingly, when jurisdictional facts are challenged, the party claiming jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject matter. *See, e.g., Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986) (per curiam). The burden is on the plaintiff since the statute outlines the terms under which the United States has waived sovereign immunity and thereby consented to suit. *See generally Dalm*, 110 S.Ct. at 1368–69.

Ohio National does not dispute that compliance with the general rule provided in § 6532(a) is jurisdictionally required. Rather, Ohio National argues that it has satisfied its burden to demonstrate subject matter jurisdiction. To support the claim of jurisdiction, Ohio National demonstrated that the IRS assessed the taxes; Ohio National paid the taxes and filed a timely claim for a refund; Ohio National did not bring suit until after the IRS acted on the claim; and Ohio National brought suit no later than two years after the IRS mailed a formal notice of disallowance.[5] Ordinarily,

these facts would be sufficient to demonstrate jurisdiction under section 6532(a). *See generally* 20 Fed Proc § 48:1174 (L.Ed. 1983).

The IRS questions none of the above facts, but suggests that it is irrelevant that Ohio National filed suit within two years of the mailing of the notice of disallowance. The IRS argues that the existence of the waiver indicates that the period of limitations commenced with the filing of the waiver rather than the mailing date of the notice of disallowance. If the waiver actually was "filed," Ohio National cannot dispute that the two-year period would begin to run with the filing of the waiver. *See* § 6532(a)(3). Jurisdiction over the taxpayer's suit therefore turns upon whether it filed the waiver, and if so when.

A review of the district court's conclusions is somewhat complicated by the court's varying characterization of the IRS's Rule 12(b) motion to dismiss. In its initial order, the district court identified the IRS's motion as a motion to dismiss for lack of subject matter jurisdiction, evidently treating the motion as one brought under Rule 12(b)(1). The district court apparently viewed the period of limitations as jurisdictional and placed the burden of proof on Ohio National. The district court also stated that the burden of *going forward* on this issue was on the IRS. Finding no persuasive evidence of a filing date, the district court concluded that the period of limitations must be computed from the notice of disallowance date rather than any alleged waiver. Put another way, the district court *resolved* the factual question against the IRS and found jurisdiction.

In responding to the IRS's motion for reconsideration, however, the district court essentially stated that the limitations issue was an affirmative defense to be estab-

---

**3.** *See Crawford v. United States*, 796 F.2d 924, 927 (7th Cir.1986) ("[S]tatutes of limitations in most suits against the federal government ... are held to be jurisdictional.").

**4.** A *nonjurisdictional* statute of limitations, for example, may be found in Title VII. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (filing a timely charge of discrimination with the EEOC

is not a jurisdictional prerequisite to suit in federal court).

**5.** Rather than demonstrating that it filed suit after the IRS acted on the claim, Ohio National alternatively could have demonstrated that it brought suit after the IRS failed to act within six months. *See* § 6532(a)(1).

lished by the movant—in this case, the IRS. The district court further stated that the Government's motion to dismiss came within Rule 12(b)(6) and that because matters outside the pleadings were to be considered, the motion would be converted to a summary judgment motion under Rule 56. The district court then concluded that there were genuine issues of material fact as to the date of the filing of the waiver, which precluded summary judgment in favor of the IRS. Based upon the wording of the lower court's order, the IRS perhaps understandably moved to set the matter for trial on the issue of jurisdiction. On May 18, 1989, the trial court denied this motion without an opinion.

■ However we characterize the IRS's motion to dismiss, it is apparent that the district court *resolved* the factual issue of whether a waiver had been filed. Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a *factual* attack, as here, no presumptive truthfulness applies to the factual allegations. Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1364, at 662–64 (West 1969). When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977).

Motions to dismiss under 12(b)(6) for failure to state a claim generally are distinct, procedurally and substantively, from motions to dismiss under 12(b)(1). When a party files a motion to dismiss under 12(b)(6), the district court is instructed to treat the motion as one for summary judgment if either party submits additional materials "outside the pleadings." The court therefore must take the plaintiff's allegations as true, and must also determine that no genuine issue of material fact exists when a Rule 56 motion is granted. Since a 12(b)(6) motion operates as a ruling on the merits, the Rule 56 conversion provides the non-moving party an additional safeguard.

■ However, the primary difference between Rule 12(b)(1) and 12(b)(6) motions is not in the procedures used but in the effect the ruling will have upon the parties. A dismissal under 12(b)(1) allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court. The *res judicata* effect of a 12(b)(1) motion is consequently limited to the jurisdictional issue. In contrast, a grant of summary judgment resolves the issue on the merits and is with prejudice. Having previously decided, based on *Johnson, Daniel,* and other cases cited *supra,* that the period of limitations in section 6532(a) is jurisdictional and appropriately viewed under Rule 12(b)(1), we now turn to the arguments offered by the IRS to support its contention that the district court erred in concluding that Ohio National's suit was timely filed.

### III.

The IRS argues that the district court erred in treating the applicable period of limitations not as jurisdictional, but merely as an affirmative defense to be established by the IRS. As a consequence, the IRS argues that the district court erroneously placed the burden of proving jurisdiction upon the IRS. Ohio National responds that the district court correctly resolved the controversy over the jurisdictional facts in its favor. It therefore believes it has satisfied its burden of proof. Ohio National argues

in the alternative that subsection 6532(a)(3), as an exception to the general rule in subsection 6532(a)(1), is most appropriately viewed as an affirmative defense to be established by the IRS. Although we believe there are good reasons for the IRS to bear the burden of demonstrating the application of section 6532(a)(3), we need not address Ohio National's alternative argument since Ohio National has satisfied its burden of demonstrating jurisdiction under section 6532(a)(1).

 Whatever the district court may have said about the procedural implications of the IRS's motion, the district court plainly resolved the factual question regarding the filing date of the waiver against the IRS. Where a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's findings unless they are "clearly erroneous." *See, e.g., In re Swine Flu Immunization Prod. Liability Lit.*, 880 F.2d 1439, 1443 (D.C.Cir.1989); *Williamson*, 645 F.2d at 412–13 (citations omitted). The district court basically concluded that there was no other evidence to negate Ohio National's *prima facie* showing of jurisdiction except for an unexplained document provided by the IRS. Since there was no persuasive evidence of a filing date, the district court did not clearly err in concluding that the period of limitations started from the date of the notice of disallowance, rather than the allegedly filed waiver.

Ohio National demonstrated that it brought suit less than two years from the mailing of the notice of disallowance. The district court reasonably concluded that the "fact that plaintiff was sent a Notice of Disallowance, and that the waiver form was not discovered in the I.R.S. administrative file by government counsel until October 1988, suggests that the form may not have been filed until some time after plaintiff's agent signed it." Although we recognize that the notice received by Ohio National does not specifically negate the effect of a waiver which has been *filed* before the receipt of the notice,[6] the inference

is reasonable that the waiver was not in the file at the time the notice was sent. The IRS admits that once a waiver has been filed there is no reason to send a notice of disallowance. *See also Henry v. United States*, 870 F.2d 634, 636 (Fed.Cir.1989) (IRS agent testified that in accordance with his normal practice, "he probably indicated [to the taxpayer] that if the taxpayer had received a notice of disallowance by certified mail, then no Form 2297 had been filed.").

The district court also did not clearly err in concluding that the "special handling notice" was not persuasive evidence. Not only did the IRS fail to present this evidence in its initial motion, but as with the waiver notice the rather cryptic notations that constitute the special handling notice bear no date. Moreover, IRS Agent Ingram's declarations regarding the filing date of the waiver are fairly speculative in nature. As noted in the facts of this case, Ingram fixed the date of the special handling notice as the same date, *i.e.* July 9, 1985, that he transferred the Ohio National file to his group manager. He failed to state, however, whether he ascertained this precise date from his memory of events almost four years earlier, or whether he was relying on a written record of the file transfer. In addition, Ingram merely concluded that he "would not have written" the special handling notice referencing the waiver "if [he] did not have the form in the file at the time." The declaration contained no indication that Ingram actually remembered that the waiver was in the file around July, 1985. The IRS could have avoided placing undue reliance on the speculative nature of the Ingram declaration if it had created a written record of the filing date of the waiver. In short, the district court was not compelled to give much weight to that evidence, especially when presented for the first time on a motion for reconsideration. *See Huff v. Metropolitan Life Ins., Co.*, 675 F.2d 119, 122 (6th Cir. 1982) (a motion for reconsideration is committed to the sound discretion of the trial court).

---

**6.** The notice provides in part that the "law permits you to [file suit] within 2 years from the mailing date of this letter. However, if you

signed a waiver of the notice of disallowance (Form 2297), the period for bringing suit began to run on the date the waiver was filed."

The IRS also argues that because the district court stated that there was no evidence of a filing date, Ohio National could not have satisfied its burden to demonstrate jurisdiction. First, the conclusion that there is no persuasive evidence of a filing date could demonstrate that the IRS has not met its burden of coming *forward* with sufficient evidence to rebut Ohio National's showing of jurisdiction under the general rule. Although we decline to hold in this case that the IRS bears the burden of demonstrating when and if the waiver was filed, the burden of production may appropriately be placed upon the IRS, particularly since the IRS is best able to establish this fact.[7]

Second, the IRS's argument assumes that the waiver was actually filed. We think that "filing" certainly must mean more than mere possession, and suggest that the IRS establish procedures to ensure that this court need not review additional appeals that could have been avoided by the use of a date-stamp. If the taxpayer is correct that the waiver was never filed, there is nothing more it could have done to satisfy its burden of proof. The taxpayer's argument that it cannot disprove a negative appears quite persuasive here. We think that a fair reading of the district court's order indicates that the district court believed that the relevant evidence favored the taxpayer, however slightly.

The IRS also argues that the district court erred in not holding an evidentiary hearing on the issue of jurisdiction. The IRS argues in the alternative that instead of refusing to dismiss the complaint the district court should have conducted an evidentiary hearing. In the absence of statutory direction, however, district courts have discretion in developing procedures for reviewing challenges to subject matter jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *Rogers*, 798 F.2d at 918 (Subject matter jurisdiction "may, of course, be challenged by a Rule 12(b)(1) motion, though by no means is that the only method.") (quoting *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 362–63 (D.C.Cir.1982) (Robinson, J., concurring).

Although the district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction, courts frequently look to Rule 56 for guidance in ruling upon evidentiary matters under 12(b)(1). *See, e.g., Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2nd Cir.1976). Further, where a court "considers factual issues outside the record on a Rule 12(b)(1) motion, it must do so in a manner that is fair to the non-moving party." *Rogers*, 798 F.2d at 918. Not surprisingly, courts have been most concerned with the fairness to the non-moving party, the party who stands to lose from the dismissal of the suit on jurisdictional grounds. The IRS, the moving party, can hardly complain about the district court's resolution of the factual question. The IRS had ample opportunity to present evidence to support its own motion. The IRS also suggests no other evidence it would present at such a hearing, except the live testimony of Ingram, the revenue agent. A district court certainly is under no obligation to hear oral testimony on a 12(b)(1) motion. The district court therefore did not err in denying an evidentiary hearing on the IRS's motion to dismiss.

AFFIRMED.

---

7. One commentator has stated:

 If a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof. The complaint must be dismissed if the evidence in the record does not support the allegations.... That the burden of proof is always on the plaintiff to show that a federal court has jurisdiction over the subject matter does not mean that a defendant, without any proof on his part, can put the plaintiff to proof by affidavit of jurisdictional facts sufficiently alleged in the complaint. The defendant must at least submit some proof that the jurisdictional facts so alleged do not exist.

*Motions in Federal Court: Civil Practice* § 5.4.10 (Shepard's 1982).