**Ernest and Nancy LEACH, Plaintiffs,**

v.

**BUILDING AND SAFETY ENGINEERING DIVISION, CITY OF PONTIAC, and Steven Manning, Defendants.**

**No. 98–70095.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 1998.

Ernest Leach, Pontiac, MI, pro se.

Robert Birach, Farmington Hills, MI, for Defendants.

### ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

ROSEN, District Judge.

#### I. INTRODUCTION

The issue in this case is whether the owners of a parcel of property, ostensibly covered by a federal land patent, are exempt from complying with the local zoning ordinances because the land comes under federal jurisdiction.

#### II. FACTS

For the past 37 years, Plaintiffs Ernest and Nancy Leach have lived at 348 Seaward,

in Pontiac, Michigan. On October 6, 1992, Plaintiffs filed a "Declaration of Land Patent" at the Oakland County Register of Deeds, bringing a land patent in their names for the real estate in question. In further support of this patent, Plaintiffs attached a certificate in which the United States grants certain lands to the Judas Church. This is the land patent that Plaintiffs allege gives rise to federal jurisdiction, because it allegedly covers the very land they now own. The certificate is dated November 6, 1821, and signed by President James Monroe.

Since that time, Plaintiffs have been embroiled in continuous dispute with the City of Pontiac over their violation of several ordinances, including operating a junk yard, storage of heavy equipment, dump trucks, mobile home, commercial truck bodies, and the like, illegal fencing, having litter on occupied property, and so on. The City of Pontiac has tried repeatedly to bring the Leaches into compliance with these ordinances, but the Leaches have apparently been uncooperative.

On May 30, 1997, the City entered onto the Leaches' property to put out a fire in which the Leaches were burning scrap wood, and to survey to conditions of the premises. The Leaches informed the police and fire personnel that they were trespassing because the property was "patent land." On July 3, 1997, the City sent a notice of Plaintiffs' violations of the City's zoning ordinances.

On July 9, 1997, Plaintiffs met with Steven Manning and Tom Farrow from the Building and Safety Division in an attempt to settle this matter, but nothing was resolved. On July 10, 1997, Plaintiffs went before the Pontiac City Council to explain that the City land ordinances had no jurisdiction over "Land Patent Property," but again this attempt was unavailing.

Finally, on November 25, 1997, several years after the initiation of this dispute, Defendants served Plaintiffs with a show cause order as to why the state court should not hold them in contempt for failing to comply with the court's earlier order. On January 7, 1997, the state court judge told Defendants they could enter and inspect the property, in order to inform Plaintiffs what personal property could remain on the premises and which could be left for their use. Plaintiffs bring this action to collaterally attack the state court's approval of the City of Pontiac's attempt to enforce its ordinances.

## III. ANALYSIS

The Leaches contend that jurisdiction vests in this court because, as a result of their federal land patent, their cause of action arises under various federal statutes. In the analogous case of *Hilgeford v. Peoples Bank,* 607 F.Supp. 536 (N.D.Ind.1985), the plaintiffs sought to quiet title in federal court because they possessed a federal land patent. The plaintiffs' land patent was signed by themselves and recorded in the local recorder of deeds office. Attached to the patent was an original land patent signed by the President of the United States.

The court ruled that even if it had jurisdiction based upon the plaintiff's theory, the plaintiff did not possess a valid federal land patent:

> Of course, the purported "land patent" in this case fails for reasons independent of jurisdiction. As was noted before, the "land patent" attached to plaintiffs' various filings is a grant of a land patent from the plaintiffs to the plaintiffs. It is, quite simply, an attempt to improve title by saying it is better. The court cannot conceive of a potentially more disruptive force in the world of property law than the ability of a person to get "superior" title to land by simply filling out a document granting himself a "land patent" and then filing it with the recorder of deeds. Such self-serving, gratuitous activity does not, cannot and will not be sufficient by itself to create good title.

> The blatant insufficiency of the "patent" is evident when it is compared to the copy of a land patent attached to the plaintiffs' "Motion Barring Action of Ejectment." That copy, which is apparently of the original land patent for part of the property which is the subject matter of this cause, bears the signature of the President of the United States by his appointed Secretary of the Interior. It is clearly a grant from the United States to a private citizen (one

Reuben Montgomery). Plaintiffs' "land patent" is obviously insufficient when compared to this valid patent.

*Hilgeford,* 607 F.Supp. at 538. *See also, Nixon v. St. Joseph Mortgage Co.,* Inc., 612 F.Supp. 253, 254–55 (N.D.Ind.1985).

■ In this case, Plaintiffs' land was not granted to them by a federal land patent, as the land patent filed by Plaintiffs in 1992 conveyed the land from themselves to themselves, in an apparent attempt to improve their title. As in *Hilgeford,* there is no nexus between the certificate signed by President Monroe and the land in question, nor do Plaintiffs demonstrate, by tracing their chain of title, that they in fact possess the land granted by that certificate to the Judas Church. Furthermore, the Court does not believe that this specious attempt to improve title somehow vests the putative patentee, here the Leaches, with a license to ignore the laws of the state.

■ Even if this patent was a valid land patent, that fact alone is insufficient to confer jurisdiction upon this Court. In another case with a fact pattern nearly identical to the instant case, the court stated:

> Case law clearly establishes that controversies about land do not present federal questions or federal question jurisdiction, even when one of the parties derived his title through an act of Congress. *See State of Wisconsin v. Baker,* 698 F.2d 1323, 1327 (7th Cir.), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983). As the Supreme Court itself has said:

> A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon which the determination of the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States. If it were not, every suit to establish title to land in the central and western states would so arise, as all titles in those states are traceable back to those laws. *Shulthis*

*v. McDougal,* 225 U.S. 561, 569–70, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912).

*Nixon,* 612 F.Supp. at 255. *See also,* Jesse Dukeminier & James E. Krier, *Property* (3rd Ed.1993) ("as *Johnson v. M'Intosh,* 21 U.S. (8 Wheat.) 543, 5 L.Ed. 681 (1923) (Marshall, C.J.)] suggests, most landowners in the United States trace their ownership—their title—back to grants (or patents, as they are called in the case of a conveyance of public land out of the government) from the United States."). In this case, Plaintiffs offer no reason why their land should be governed by federal law, except for the fact that they can allegedly trace their title back to a federal land patent. As *Nixon* and *Shulthis* make clear, however, this fact alone is insufficient to engender federal jurisdiction because nearly all of the property that currently constitutes the United States was at some point granted or conferred by federal land patent or otherwise. Stated simply, there must be some other specific basis for federal jurisdiction.

An example of such a specific basis can be found in *Oneida Indian Nation v. Oneida County,* 414 U.S. 661, 677, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). In that case, the Supreme Court ruled that the Oneida Indians suit to recover certain lands was properly brought in federal court because the assertion of a federal controversy did not rest solely upon a claim that possession derived from a federal grant, but rather, that federal law protects the possessory rights of tribal lands. In so ruling, the Supreme Court stated that this was an exception to the general rule that localities have plenary power over local property:

> Once patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed under a United States patent. *Joy v. City of St. Louis,* 201 U.S. 332, 342—343, 26 S.Ct. 478, 481, 50 L.Ed. 776 (1906). As the Court stated in *Packer v. Bird,* 137 U.S. 661, 669, 11 S.Ct. 210, 212, 34 L.Ed. 819 (1891):

'The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants; but whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states, subject to the condition that their rules do not impair the efficacy of the grants or the use and enjoyment of the property by the grantee.'

Chief Justice Rehnquist wrote a separate concurrence specifically to reiterate this point:

> Commonly, the grant of a land patent to a private party carries with it no guarantee of continuing federal interest and certainly carries with it no indefinitely redeemable passport into federal court. On the contrary, as the majority points out, the land thus conveyed was generally subject to state law thereafter.
>
> Thus, this Court's decisions have established a strict rule that mere allegation of a federal source of title does not convert an ordinary ejectment action into a federal case.

*Oneida*, 414 U.S. at 683. Plaintiffs in the instant case fail to proffer any reason, aside from the federal patent, why their property should be governed by federal law in contravention of the general rule reiterated in Oneida. Again, as the basis for their claim of federal jurisdiction rests solely upon the fact that the land was originally granted by a federal land patent, their claim must fail.[1]

## IV. CONCLUSION

Therefore, because the Court does not have jurisdiction in this matter, Plaintiffs' Motion for a Temporary Restraining Order is hereby DENIED. The issues raised in the Complaint coincide with those raised by Plaintiffs' Motion under Rule 65, and, therefore, this opinion and order disposes of all the issues presented in this case. Accordingly, the case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

---

1. The Court notes that Plaintiffs' claims would also be barred by the Rooker–Feldman and/or Younger abstention doctrines, and possibly by res judicata and collateral estoppel as well, because they have already litigated, or could have litigated, the issues raised here in the state court proceedings.