Ernest LEACH, Nancy Leach, and
Robert Leach, Plaintiffs,

v.

H. Steven MANNING, Michael J. Wilson, Ernest Forbes, Linda Cedillo, Cynthia Officer, and Tom McIntire, Defendants.

No. 99–74363.

United States District Court,
E.D. Michigan,
Southern Division.

June 2, 2000.

Ernest Leach, Pontiac, MI, pro se.

Nancy Leach, Pontiac, MI, pro se.

Robert Leach, Pontiac, MI, pro se.

Thomas R. Schultz, Secrest, Wardle, Farmington Hills, MI, for H. Steven Manning, Michael J. Wilson, Ernest Forbes, Linda Cedifo, Cynithia Officer, Tom McIntyre.

*OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT*

ROSEN, District Judge.

## I. INTRODUCTION

Plaintiffs Ernest and Nancy Leach and their son Robert Leach commenced this action in this Court on September 7, 1999 against the six Defendants, all employees of the City of Pontiac. In their 23-count *pro se* Complaint, Plaintiffs assert claims under 42 U.S.C. § 1983, as well as other federal and state-law claims, arising from civil citations issued by the City of Pontiac for alleged violations of Pontiac ordinances and the city housing code on properties owned by Plaintiffs. Plaintiffs allege that Defendants unlawfully trespassed on their property in posting various notices and orders, that their property is exempt from state or municipal regulation because it is held under a United States land patent, that certain of the citations in question were issued against property not owned by Plaintiffs, and, more generally, that Defendants have engaged in a pattern of selective and vindictive enforcement of municipal ordinances in retaliation against Plaintiffs' public criticism of Defendants.

By motion filed on February 11, 2000, Defendants now seek the dismissal of Plaintiffs' claims or, alternatively, an award of summary judgment in their favor on each of these claims. In support of this motion, Defendants argue (1) that Plaintiffs' reliance on a U.S. land patent fails to provide a jurisdictional basis for their claims; (2) that Plaintiffs have failed to put forward sufficient allegations to sustain their equal protection and selective prosecution claims; (3) that Defendants are entitled to qualified immunity; and (4) that, to the extent Plaintiffs have asserted a Fifth Amendment takings claim, this claim is not ripe for review. Plaintiffs filed responses to this motion on February 22, 2000 and March 15, 2000, and Defendants filed a reply brief in further support of their motion on March 6, 2000.

On May 25, 2000, the Court heard oral argument on this motion. Having reviewed the parties' submissions and the other materials in the record, and having considered the arguments presented at the May 25 hearing, the Court is now prepared to rule on Defendants' motion. This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the present motion, the factual record is fairly straightforward. Plaintiffs Ernest and Nancy Leach and their son Robert Leach are long-time residents of the City of Pontiac, and apparently own three parcels of property in Pontiac located at 56 W. Rundell, 248 Cesar Chavez, and 348 Seward. Defendants are employees of the City of Pontiac, and allegedly have had discussions and other interactions with Plaintiffs over the years regarding their property.

During the course of 1999, the City of Pontiac issued over a dozen civil infraction citations against Plaintiffs Ernest and Nancy Leach regarding conditions on the properties located at 348 Seward and 284 Cesar Chavez.[1] Defendant Cynthia Officer allegedly was responsible for issuing most of these citations. These citations charged Plaintiffs with violating several Pontiac housing, property and zoning ordinances. Plaintiffs' alleged violations included rat harboring, failure to maintain the exterior of the property, unsanitary conditions, accumulation of rubbish or garbage, erecting an illegal fence, weed overgrowth, and failure to comply with a zoning official. According to Defendants, many of these alleged violations have been

---

1. As noted above, Plaintiffs' property apparently is located at 248 Cesar Chavez, and not 284 Cesar Chavez. In their Complaint and response brief, Plaintiffs point to the citations for 284 Cesar Chavez as evidence that Defendants are engaged in a pattern of harassment by issuing citations for property not owned by Plaintiffs.

addressed before the state district court, but others remaining pending. Of the citations that have been resolved, Plaintiffs have been adjudged "responsible" in four cases, while seven others have been dismissed.

Apart from these citations, Plaintiffs further allege that certain of the Defendants posted condemnation notices and stop work orders on Plaintiffs' property at various times during 1999. Plaintiffs also met with and had conversations with Defendant H. Steven Manning, Pontiac's Planning Director, regarding conditions on Plaintiffs' properties. These discussions apparently failed to resolve the parties' differences.

Dissatisfied with the civil infraction citations and their other interactions with Pontiac officials regarding their property, Plaintiffs filed the present *pro se* Complaint on September 7, 1999, asserting 23 separate federal and state-law causes of action.[2] Although the legal theories alleged in the Complaint are sometimes difficult to discern, Plaintiffs' claims generally may be characterized as falling into four categories: (1) challenges to Defendants' authority to enforce Pontiac municipal ordinances against land held by Plaintiffs under a U.S. land patent; (2) challenges to the underlying merits of the civil infraction citations issued against Plaintiffs; (3) claims that Defendants have selectively or vindictively prosecuted Plaintiffs for civil infractions in retaliation against Plaintiffs' public criticism of Defendants; and (4) trespassing claims. In support of these claims, Plaintiffs cite a variety of federal and state laws, including: (1) various provisions of the U.S. Constitution, such as the Supremacy Clause, U.S. Const., Art. VI, cl. 2, the Contracts Clause, U.S. Const., Art. I, § 10, cl. 1, and the First, Fifth, and Fourteenth Amendments; (2)

various federal civil rights statutes, including 42 U.S.C. §§ 1982 and 1983 and their criminal counterparts, 18 U.S.C. §§ 241 and 242; and (3) several provisions of the Michigan Constitution. Plaintiffs seek an award of money damages in excess of $500,000, a declaration that Defendants' actions violated the federal and state constitutions and laws and Plaintiffs' civil rights, and an order enjoining Defendants from entering Plaintiffs' property or from harassing Plaintiffs in retaliation against their filing of this suit.

In their present motion, Defendants seek the dismissal of Plaintiffs' claims or, alternatively, an award of summary judgment in their favor on each of these claims. Because Defendants' motion is based in part on the defense of qualified immunity, this Court, in reliance on the Sixth Circuit's decisions in *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993), and *Criss v. City of Kent,* 867 F.2d 259, 261 (6th Cir. 1988), issued an Order on February 28, 2000 staying discovery until Defendants' motion is resolved. Following a May 25, 2000 hearing, the Court is now prepared to rule on this motion. As explained below, Defendants' motion will be granted in part, albeit largely on grounds not raised by Defendants themselves.

### III. *ANALYSIS*

**A. The Standards Governing Defendants' Motion**

In their present motion, Defendants rely on Fed.R.Civ.P. 12(b)(1), Fed. R.Civ.P. 12(b)(6), and Fed.R.Civ.P. 56 as alternative bases for challenging Plaintiffs' claims. Under the first of these rules, Fed.R.Civ.P. 12(b)(1), a party may mount either a facial or a factual attack on the subject matter jurisdiction of the Court.

---

2. This is the second time Plaintiffs have brought suit in this Court. In January of 1998, Plaintiffs challenged a Michigan state court ruling that Pontiac officials could enter and inspect Plaintiffs' property in an effort to enforce City ordinances. This Court dismissed the action, holding that Plaintiffs' al-

leged status as owners of property originally granted under a federal land patent was insufficient, standing alone, to vest jurisdiction in a federal court. *Leach v. Building & Safety Eng'g Div., City of Pontiac,* 993 F.Supp. 606 (E.D.Mich.1998).

*Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A facial attack "merely questions the sufficiency of the pleading," and, in resolving such a jurisdictional challenge, the Court "takes the allegations in the complaint as true." 922 F.2d at 325. Alternatively, if the Court is confronted with a factual controversy as to the jurisdictional basis for the case, it must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." 922 F.2d at 325. In this latter situation, the Court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." 922 F.2d at 325. Regardless of the nature of the attack, "[w]here subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990).

Next, in considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court is required to accept as true the well-pleaded factual allegations set forth in Plaintiff's Complaint. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan,* 829 F.2d at 12.

Finally, to the extent that the Court must look to materials outside the pleadings in order to resolve Defendants' motion, the Court will treat the motion as seeking summary judgment under Fed. R.Civ.P. 56. Under this Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the federal courts' review of motions for summary judgment. These cases, in the aggregate, lowered the movant's burden in seeking summary judgment. As stated in *Celotex:*

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy of cases, the Sixth Circuit adopted a series of principles governing motions for summary judgment. These principles include:

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that

there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989); *see also Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir.1994). The Court will apply the above standards in resolving Defendants' motion to dismiss or for summary judgment.

## B. Plaintiffs' Challenges to Pontiac's Authority to Enforce Its Ordinances

Although the *pro se* Complaint in this case fails to clearly and distinctly set forth Plaintiffs' various theories of recovery, several of Plaintiffs' claims rest upon the premise that the City of Pontiac and its officials, the individual Defendants, lack the authority to enforce City ordinances against property that was originally granted under a U.S. land patent. Drawing upon this Court's decision dismissing Plaintiffs' prior suit for lack of subject matter jurisdiction, *Leach v. Building & Safety Eng'g Div., City of Pontiac*, 993 F.Supp. 606 (E.D.Mich.1998), Defendants argue that Plaintiffs' appeal in the present case to a federal land patent in their chain of title is once again inadequate to vest this Court with subject matter jurisdiction. The Court finds no merit in this jurisdictional challenge, but concludes that Plaintiffs are barred by *res judicata*, collateral estoppel, and the *Rooker–Feldman* doctrine from pursuing their U.S. land patent theory, and that, in any event, this theory is legally insufficient to sustain Plaintiffs' claims.

■ In their prior suit, Plaintiffs' claim to federal court jurisdiction rested not on the assertion of any claims arising under federal law, but solely upon their allegation that the property they now own can be traced back to an 1821 federal land patent in which the United States granted certain land to the Judah Church. This Court held that this federal land patent in the chain of title, standing alone, was insufficient to confer subject matter jurisdiction over Plaintiffs' claims. Defendants argue that the same jurisdictional defect is present in this case. This contention, however, ignores the federal claims stated plainly on the face of the Complaint. For example, Count One of the Complaint expressly asserts a claim under 42 U.S.C. § 1983, alleging that Defendants violated Plaintiffs' civil rights through their enforcement of certain Pontiac ordinances against the Plaintiffs and their property. This assertion of claims arising under federal law is sufficient to confer federal subject matter jurisdiction on this Court pursuant to 28 U.S.C. § 1331.

Nevertheless, as observed in a footnote in this Court's decision in the prior suit, *see Leach*, 993 F.Supp. at 609 n. 1, several legal doctrines—including *res judicata*, collateral estoppel, the *Rooker–Feldman* doctrine, and *Younger* abstention—stand in the way of Plaintiffs' assertion of their federal land patent theory. In its earlier opinion, this Court noted that Plaintiffs' federal land patent claims had been rejected by a Michigan state court, and that the state court had instead authorized City of Pontiac officials, over Plaintiffs' objections, to enter and inspect Plaintiffs' property for the purpose of enforcing City ordinances. *Leach*, 993 F.Supp. at 607. Under principles of collateral estoppel, this state court determination precludes Plaintiffs from relitigating their claim that their property is exempt from the reach of Pontiac municipal ordinances. *See Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir.1987) ("Where a party has had a 'full and fair opportunity' to litigate an issue in earlier state court proceedings, he is precluded from relitigating the same issue in a later federal case.").

Moreover, to the extent that Plaintiffs are challenging each individual civil infraction citation as an unlawful attempt to enforce a municipal ordinance against property with a federal land patent in its chain of title, these challenges fail under

principles of *res judicata,* at least as to those citations that have been resolved in the state courts.[3] In the context of each such citation that has been the subject of a state court proceeding, Plaintiffs could have raised—and perhaps did raise—their argument that Pontiac's ordinances are unenforceable as to their property. This argument, if accepted, would be a complete defense to the civil infractions .charged against Plaintiffs. Plaintiffs' opportunity to assert this defense in the state court proceedings—an opportunity Plaintiffs have not denied—precludes any further litigation on the question whether Plaintiffs' property is subject to the City's ordinances. *See Reithmiller v. Blue Cross & Blue Shield of Michigan,* 824 F.2d 510, 511 (6th Cir.1987).

■ The closely related *Rooker–Feldman* doctrine also prevents Plaintiffs from mounting a federal court "appeal" of a state court judgment that their property is not exempt from Pontiac ordinances. "*Rooker–Feldman* stands for the simple (yet nonetheless confusing) proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Medical Planning Servs., Inc.,* 142 F.3d 326, 330 (6th Cir.1998); *see also Community Treatment Ctrs., Inc. v. City of Westland,* 970 F.Supp. 1197, 1212–14 (E.D.Mich. 1997). 'If Plaintiffs are dissatisfied with the state district court's resolution of one or more of the citations issued against them and their property, their sole recourse is to appeal this decision through the state court system, and then to the U.S. Supreme Court. This Court lacks jurisdiction to entertain a collateral attack upon a state court judgment, including that portion of any ruling in which the state court determined, even if only implicitly, that Plaintiffs' property is not exempt from the reach of Pontiac municipal ordinances.

■ Finally, to the extent that some of the civil infraction citations remain pending in the state court, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny dictate that this Court must abstain from considering any claims that are currently being litigated in the state court system. As this Court has observed, "*Younger* established the principle that in cases seeking to enjoin or otherwise interfere with on-going state proceedings—be they criminal, civil, or administrative—federal courts should not exercise jurisdiction but should instead dismiss the cases in their entirety." *Community Treatment Ctrs.,* 970 F.Supp. at 1221. Thus, as to any civil infractions still pending before the state court, this Court may not consider whether the ordinances involved in those proceedings are enforceable against Plaintiff's property. The state district court must make this determination in the first instance, and Plaintiffs must pursue their state court remedies if they are not satisfied with the district court's decision.

■ In any event, even if the Court were to reach the merits of Plaintiffs' U.S. land patent theory, it is clear that the mere presence of such a federal land patent in the chain of title does not exempt property from state and local regulation. The fact that the United States once held title to a parcel of property—a fact that, as noted in this Court's opinion in Plaintiffs' prior suit, applies to virtually all property in the central and western states, *see Leach,* 993 F.Supp. at 608—does not operate to confer permanent immunity from state and municipal law, no matter who holds the present title. Rather, the Supreme Court has stated that "[o]nce patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 676, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974). Thus, Plaintiffs' allega-

---

**3.** As noted earlier, Defendants state that eleven of the citations issued against Plaintiff

have been resolved by the state district court, while seven others remain pending.

tion of a U.S. land patent in their chain of title does not exclude their property from the reach of City of Pontiac ordinances.

### C. Plaintiffs' Challenges to the Merits of the Civil Infraction Citations

In certain of their claims, Plaintiffs challenge the merits of the civil infraction citations issued against them and their property. For example, Plaintiffs allege that some of the citations involve parcels of property that they do not own. As is evident from the foregoing discussion, however, Plaintiffs may not bring such challenges before this Court. Regarding those citations that have already been addressed in state court, the doctrine of *res judicata* precludes relitigation of the merits of those citations, and the *Rooker–Feldman* doctrine prohibits this Court from exercising jurisdiction over the functional equivalent of an appeal from the state court proceedings. Regarding the citations that are still pending before the state court, *Younger* and its progeny require that this Court abstain from addressing those citations. Consequently, Plaintiffs' claims challenging the merits of the civil infraction citations must be dismissed.

### D. Plaintiffs' Claims of Selective and Vindictive Prosecution

Although, as discussed above, Plaintiffs have asserted a variety of other challenges to Defendants' efforts to enforce City of Pontiac ordinances, the crux of their Complaint is that Defendants have selectively enforced City ordinances against Plaintiffs and their property in retaliation against Plaintiffs' public criticism of Defendants. In seeking the dismissal of these claims, Defendants contend that Plaintiffs have failed to identify the requisite "protected class" of which they are members, and that Defendants are entitled to qualified immunity from liability under this theory of selective prosecution. The Court finds that both of these arguments are flawed,

because they fail to recognize the true nature of Plaintiffs' claims.

In *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056–60 (6th Cir.1996), the Sixth Circuit dealt extensively with the theory of selective prosecution, as well as the related theory of vindictive prosecution. The Court first set forth the narrow bounds of these theories of liability under 42 U.S.C. § 1983 and the U.S. Constitution:

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere; and prosecutors have broad discretion in deciding whom to prosecute.

78 F.3d at 1056. Nevertheless, the Court acknowledged that "[s]ometimes the enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination," and observed that "[t]o address this problem, courts have developed the doctrine of selective enforcement." 78 F.3d at 1056.

Under this "selective enforcement" theory, a plaintiff must show: "(1) membership in a protected group; (2) prosecution; (3) that others in a similar situation not members of the protected group would not be prosecuted; and (4) that the prosecution was initiated with discriminatory intent." 78 F.3d at 1056 n. 7. In their motion, Defendants argue that Plaintiffs have failed to state a claim of selective enforcement, citing the lack of any allegation in the Complaint as to a "protected group" of which Plaintiffs are members. The Court agrees that such an allegation is nowhere to be found in the Complaint.[4] Moreover, Plaintiffs have

---

**4.** In their response to Defendants' motion, Plaintiffs state that they are Native Americans. This allegation, however, is wholly absent from the Complaint, and Plaintiffs likewise have not alleged that Defendants were aware of this or acted with intent to discriminate on this basis.

failed to identify, either in their Complaint or in their response to Defendants' motion, any other individuals, not members of Plaintiffs' protected group (whatever that might be), who committed similar violations of Pontiac ordinances yet were not prosecuted. *See Stemler v. City of Florence,* 126 F.3d 856, 873 (6th Cir.1997) (holding that, in order to sustain a selective prosecution claim, "it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside her category were not prosecuted"). Thus, Plaintiffs have failed to state a claim of selective prosecution.

■ This, however, is not the end of the matter. As explained in *Futernick,* the related theory of "vindictive prosecution" is available where the government selectively enforces its laws in order to "discourage or punish the exercise of a constitutional right, especially the right to criticize the government." *Futernick,* 78 F.3d at 1057. Plaintiffs' Complaint is replete with allegations that Defendants singled them out for prosecution in an attempt to silence their public criticism of Defendants. Accordingly, it is clear that Plaintiffs have stated at least the bare outlines of a claim of vindictive prosecution.

■ In apparent recognition of this, Defendants assert that the doctrine of qualified immunity shields them from liability under this theory of vindictive prosecution. This doctrine protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In seeking to invoke qualified immunity, however, Defendants mischaracterize the "clearly established" right at issue here. They argue that the right asserted by Plaintiffs is their purported entitlement, under their federal land patent theory, to be free of state or local property regulations. In fact, as to

their claim of vindictive prosecution, the right asserted by Plaintiffs is the First Amendment right to publicly criticize local government officials without fear of reprisal, in the form of selective enforcement of local law against the speaker. The Supreme Court, the Sixth Circuit, and this Court all have expressly recognized that public criticism of the government is protected First Amendment speech that may not lawfully form the basis for retaliatory government action. *See Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972); *Futernick,* 78 F.3d at 1057; *Dubuc v. Green Oak Township,* 958 F.Supp. 1231, 1235, 1243 (E.D.Mich.1997). Thus, a reasonable person in Defendants' position would have readily recognized the unlawfulness of the retaliatory conduct alleged by Plaintiffs, and Defendants' claim to the contrary is without merit.

In their reply brief, however, Defendants suggest that the Supreme Court's recent decision in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), expands the availability of the qualified immunity defense in cases where, as here, the motive of the government actor is at issue. In fact, in the passage quoted by Defendants, the Court merely notes that other mechanisms are available under existing law to ferret out meritless § 1983 claims, even where the plaintiff is able to identify a "clearly established" right upon which his claim is based. 118 S.Ct. at 1594. Nothing in *Crawford–El* changes the nature of the qualified immunity inquiry; to the contrary, the Court expressly declined to heighten the burden on plaintiffs, whether by altering the qualified immunity standard or otherwise, in cases involving questions of motive. *See Hoard v. Sizemore,* 198 F.3d 205, 218–19 (6th Cir.1999) (construing *Crawford–El* ); *Thaddeus–X v. Blatter,* 175 F.3d 378, 385–86 (6th Cir.1999) (en banc) (same).

One such mechanism noted by the *Crawford–El* Court, however, seemingly comes into play in the present case. In

order to "protect[ ] the substance of the qualified immunity defense," the Court suggested that a district court might, in its discretion, "insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford–El,* 118 S.Ct. at 1596–97 (internal quotations and citation omitted). The Sixth Circuit has adopted a similar mechanism:

> Since qualified immunity is an affirmative defense that must be pleaded by the defendant official, the plaintiff need not fully anticipate the defense in the complaint. It follows, then, that when a qualified immunity challenge is made to the complaint, the plaintiff is entitled to the opportunity to come forward with additional facts or allegations that show not only the violation of his rights, but also that these rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct. If this pleading burden is not carried by plaintiff in either the original complaint or by a pleading in response to defendant's assertion of the qualified immunity defense, dismissal is proper.

*Veney v. Hogan,* 70 F.3d 917, 921 (6th Cir.1995) (citations omitted). The Court then explained the nature of the response required to avoid such dismissal:

> Accordingly, when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proven, will overcome the defense of qualified immunity. For example, if the original complaint alleged that a police officer "used

excessive force," and qualified immunity is asserted, then plaintiff would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable. It is in this sense that a heightened standard attaches to plaintiff's pleading.

*Veney,* 70 F.3d at 922.

 Measured by this standard, neither Plaintiffs' Complaint nor their response to Defendants' motion is fully adequate to apprise Defendants or this Court of the basis for Plaintiffs' claim of vindictive prosecution. To prevail under this theory, Plaintiffs must show: "(1) exercise of a protected right; (2) the prosecutor's 'stake' in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and ... (4) that the prosecution was initiated with the intent to punish the plaintiff for exercise of the protected right." *Futernick,* 78 F.3d at 1056 n. 7. As to the first of these elements, Plaintiffs allege only that they have engaged in "public criticism" of Defendants, without identifying the nature of these criticisms. As Defendants point out, this lack of specificity renders impossible any determination whether Plaintiffs' alleged speech was on a matter of "public concern," such that it enjoys broad First Amendment protection. *See Thaddeus–X,* 175 F.3d at 388–90. Plaintiffs' allegations as to the remaining elements are similarly vague and conclusory; they allege only that Defendants' enforcement efforts were motivated by a desire to silence Plaintiffs' public criticism. Again, Plaintiffs provide no specific support for their belief that Defendants were so motivated.

Nevertheless, the Court concludes that the dismissal of Plaintiffs' vindictive prosecution claim is not appropriate under the particular circumstances of this case. First, it is important to note that Plaintiffs are pursuing their claims without the assistance of counsel, so that it is appropriate to view with more latitude the allegations of their Complaint. Next, and more

importantly, the Court cannot help but observe that Defendants' motion does not mount the sort of well-focused attack on Plaintiffs' vindictive prosecution theory that might have alerted Plaintiffs that more specific and detailed allegations were necessary in order to defeat the motion. Indeed, Defendants barely mention Plaintiffs' vindictive prosecution theory in their motion and supporting papers, and they seek to overcome this theory solely through the conclusory assertion, made for the first time in their reply brief and wholly unsupported by evidence or affidavits, that "Defendants specifically deny any improper motive in their dealings with the Plaintiffs." (Defendants' Reply Br. at 4.)

Under these circumstances, the Court finds that dismissal is inappropriate, and that the most prudent course of action is to exercise its "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford–El*, 118 S.Ct. at 1597. Plaintiffs will be afforded the opportunity to engage in narrowly tailored discovery, limited to only those issues bearing upon the elements of a claim of vindictive prosecution. In addition, Plaintiffs are ordered to file an amended Complaint, with more specific allegations as to the nature of their "public criticism" of Defendants, as well as specific support for their claim that Defendants were motivated by this public criticism to pursue enforcement efforts against Plaintiffs and their property. Following their receipt of this amended Complaint and the limited period of discovery, Defendants may, if they wish and if warranted, bring a renewed motion for summary judgment challenging the basis for Plaintiffs' claim of vindictive prosecution.

### E. Plaintiffs' Remaining Claims

Apart from their § 1983 claims, Plaintiffs also cite 42 U.S.C. § 1982 as purportedly giving rise to one or more of their claims.[5] However, as Defendants point out, the Sixth Circuit has held, in an unpublished opinion, that § 1982 is "limited to claims of discrimination involving conveyances of real and personal property." *Al–Marayati v. University of Toledo*, 145 F.3d 1329, 1998 WL 252760, at \*2 (6th Cir. May 13, 1998). The Court also found that § 1982 "deals only with racial discrimination." *Id.*, 145 F.3d 1329, 1998 WL 252760 at \*2. Plaintiffs' Complaint contains neither allegations relating to a conveyance of property, nor allegations of racial discrimination. Next, Plaintiffs cite 18 U.S.C. §§ 241 and 242 as the basis for some of their causes of action. These federal criminal provisions, however, do not create a private cause of action. *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir.1989). Accordingly, Plaintiffs' claims arising under 42 U.S.C. § 1982 and 18 U.S.C. §§ 241 and 242 will be dismissed.

Finally, Defendants invite the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Because one of Plaintiffs' federal claims remains—the claim of vindictive prosecution—the Court need not address this matter at this juncture.

### IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss or for Summary Judgment is GRANTED IN PART and DENIED IN PART, without prejudice to Defendants' opportunity, following the close of discovery, to bring a renewed motion for summary judgment challenging Plaintiffs' outstanding claims. Plaintiffs will be permitted to go forward on their federal claim that Defendants allegedly have vindictively enforced City of Pontiac ordinances against Plaintiffs and their property in retaliation against Plaintiffs' public criticism of Defendants. Plain-

---

5. This statute provides:

 All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

 42 U.S.C. §. 1982.

tiffs' remaining federal claims, however, are hereby dismissed.

IT IS FURTHER ORDERED that, within fifteen (15) days of the date of this Opinion and Order, Plaintiffs shall file an Amended Complaint, stating with greater particularity the allegations in support of their federal claim of vindictive prosecution.[6]

Finally, IT IS FURTHER ORDERED that the Court's February 28, 2000 Order staying discovery is hereby VACATED, that discovery may now proceed in accordance with this Opinion and Order, and that the Court's December 13, 1999 Scheduling Order is hereby AMENDED to extend certain deadlines, as follows:

| | |
|---|---|
| Preliminary Witness Lists: | 7/14/2000 |
| Discovery Cut–Off: | 7/28/2000 |
| Non–Expert Final Witness Lists: | 8/11/2000 |
| Dispositive Motions: | 8/31/2000 |
| Proposed Joint Final Pretrial Order: | 11/15/2000 |
| Final Pretrial Settlement Conference: | 11/21/2000 at 10 a.m. |
| Jury Trial: | 12/2000 |

In all other respects, the Court's December 13, 1999 Scheduling Order remains in full force and effect.

---

**6.** Plaintiffs' Amended Complaint should omit the federal claims dismissed pursuant to this Opinion and Order.