**Eugene WOJTON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C–3–00–259.

United States District Court, S.D. Ohio, Western Division.

March 4, 2002.

Edward J. McNelis, III, Rawls & McNelis, Richmond, VA, Elias Namanworth, Cincinnati, OH, for plaintiff.

Pamela M. Stanek, United States Attorney's Office, Gregory Gordon, Lockhart, Assistant U.S. Attorney, Dayton, OH, for defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (DOC. # 15), CONSIDERED AS A MOTION CHALLENGING SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); CONFERENCE CALL SET TO DETERMINE VIABILITY OF APRIL 1, 2002, TRIAL DATE

RICE, Chief Judge.

Plaintiff Eugene Wojton is a veteran of World War II. In his Complaint (Doc. # 1), he set forth four negligence causes of action against Defendant United States Department of Veterans Affairs ("VA"). The VA now moves to dismiss, or, alternatively, for summary judgment. (*See* Doc. # 15.)

I. *Factual Background*

Wojton served in the Pacific Theatre during World War II. (Wojton Aff., attached as Ex. A to Pl.'s Memo. in Opp. (Doc. # 17), ¶ 2.) He is the recipient of two purple hearts. (*Id.*) In 1947, after his return from service, he sought treatment from the VA at a Veterans Administration Medical Center ("VAMC"), and was diagnosed with a "nervous condition," for which he received medication. (*Id.* ¶ 4.) Subsequently, in the first half of the 1950s, the VA diagnosed him with schizophrenia. (*Id.* ¶ 5.) Pursuant to his diagnosis, Wojton was prescribed various "anti-psychotic" medications. (*Id.*) His treatment for schizophrenia, including his medication therapy, extended up to October of 1996. (*Id.*) That month, Wojton was diagnosed by a private physician as having Post Traumatic Stress Disorder ("PTSD"), and was told that he did not have, nor had he ever had, schizophrenia. (*Id.* ¶ 6.) He was told the PTSD was the result of his experiences in the Pacific Theatre. (Reff Aff., attached as Ex. B to Doc. # 17, ¶ 2.) As a result, he was taken off the schizophrenia medication and prescribed something new for his PTSD. (*Id.*)

The private physician who treated Wojton, Dr. Robert Reff, states that the medications Wojton had been taking prior to visiting him in October of 1996 were consistent with those typically prescribed to persons being treated for schizophrenia, and would not have been proper for treating PTSD. (Reff Aff. ¶ 3.) Furthermore, it is Dr. Reff's opinion, to a reasonable degree of medical certainty, that Wojton's long-term treatment with the schizophrenia medication is evidence of a clear breach of the proper medical standard of care for someone with PTSD. (*Id.* ¶ 4.) Furthermore, said treatment, in Dr. Reff's opinion, prevented Wojton from enjoying a sufficient cognitive ability to appreciate the alleged misdiagnosis. (*Id.* ¶ 5.)

Wojton alleges that the VA committed four acts of negligence, those being: 1) its wrongful diagnosis of schizophrenia; 2) its wrongful prescription of schizophrenia medication; 3) its failure to diagnose PTSD; and 4) its failure to prescribe PTSD medications. He seeks damages on a number of bases, including loss of statutory benefits for the service-related infliction of PTSD.

The VA argues that, 1) Wojton's cause of action is barred by the statute of limitations, 2) it is precluded by 38 U.S.C. § 511,

3) it is precluded by the doctrine of sovereign immunity, 4) the Court lacks subject matter jurisdiction generally, 5) it is precluded by 28 U.S.C. § 1346(d), and 6) it is precluded on account of his having failed to exhaust his administrative remedies. Having considered the gravamen of these alternative bases for dismissal, the Court finds that they all go to subject matter jurisdiction, and that it is proper to construe the Motion in all respects as one brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

For the reasons stated below, the VA's Motion is SUSTAINED IN PART and OVERRULED IN PART.

## II.  *Analysis*

In *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990), the Sixth Circuit, at 325, laid out the procedural framework for motions brought under Rule 12(b)(1):

> Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties.  A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.  In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.  On the other hand, when a court reviews a complaint under a factual attack, as here, no presumptive truthfulness applies to the factual allegations.  Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion."  *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1364, at 662–64

(West 1969).  When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist.  In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.  (Citations omitted.)

The *National Life* court went on to say that where the issue is whether the limitations period to file suit against the United States has run, it is a jurisdictional matter, and it is proper to treat a dismissal motion raising the issue as one coming under Rule 12(b)(1).[1]  As is evident from the holding in that case, the fact that the Court may give consideration to certain evidence in order to make a determination as to its jurisdiction does not transform the VA's Motion into one for summary judgment.

### A.  *Facial Attacks on Subject Matter Jurisdiction*

Of the VA's six proffered grounds for dismissal, the Court finds that two can be characterized as a "facial attacks" on the Court's jurisdiction, and four can be characterized as "factual attacks."  The Court will dispose of the two facial attacks, and then address the factual attacks.

■  To begin with, the VA's fourth argument for dismissal is that Wojton has failed to show, as is his burden, that this Court has subject matter jurisdiction to consider his claim.  Its argument consists of a single boilerplate sentence proposing as much, and a citation to the *National*

---

**1.**  The action in *National Life* arose under the tax laws of the United States, and the statute of limitations at issue was contained at 26 U.S.C. § 6532.  Although a different statute than the one at issue herein, the distinction is immaterial.  As the *National Life* court noted, "*most* periods of limitation involving suits against the sovereign ... are jurisdictional." 922 F.2d at 324 (emphasis in original).

*Life* case for support. The Court construes this argument as a "facial attack" on the Court's subject matter jurisdiction.

Wojton's action is brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*[2] He avers that jurisdiction is proper under 28 U.S.C. § 1346(b), which grants the district courts jurisdiction to hear claims for damages against the United States arising from its alleged negligence.[3] Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to set forth the grounds upon which this Court's jurisdiction exists. Wojton has done this. Taking the allegations in the Complaint as true, as *National Life* instructs it to do, the Court finds that the VA's fourth argument for dismissal is not well taken, and its Motion is OVERRULED with respect to this issue.

■ In its sixth argument, the VA moves to dismiss on the basis that Wojton's FTCA claim is precluded by 28 U.S.C. § 1346(d), a statute generally known as the Tucker Act. This is not the case. Section 1346(d) bars the district courts from taking jurisdiction of "any civil action or claim for a pension." In this instance, this argument also can be viewed as a facial attack on the Court's jurisdiction and can be resolved by looking at the face of Wojton's Complaint. As it is clear that Wojton is not seeking any pension benefits, it is equally clear that § 1346(d) is inapplicable.[4] On this issue, too, the VA's Motion is OVERRULED.

## B. *Factual Attacks on Subject Matter Jurisdiction*

■ The VA's primary argument is that Wojton's claim must fail because it was filed after the expiration of the limitations period. 28 U.S.C. § 2401(b) establishes a two-year limitations period for tort claims against the United States. Within that period of time, the claim must be presented "in writing to the appropriate Federal agency" which allegedly committed the tortious act. *Id.* Furthermore, if the claim is denied by the agency, the claimant has six months from the date of the mailing of the notice of denial to file in court. *Id.* Because the ability to file a tort suit against the United States arises by virtue of the Government's volitional waiver of its sovereign immunity, a failure to file such within the statutory period of limitations divests a district court of its subject matter jurisdiction. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir.1981); *National Life, supra; Johnson v. The Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999); *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990). Thus, as the Sixth Circuit did in *National Life*, the Court construes this limitations defense as a "factual attack" on the Court's subject matter jurisdiction.

2. In particular, 28 U.S.C. § 2674 provides that the United States shall be liable for tort claims against it to the extent a private individual would be.

3. Such an action is tried to the Court without a jury. 28 U.S.C. § 2402.

4. The VA does not elaborate on its argument, but if it intends to argue that the phrase "any civil action" should be read in isolation from the phrase "claim for a pension," the argument must be rejected as it would give rise to an absurd result: if district courts were truly not granted jurisdiction to hear "any civil action" against the United States, they would be stripped in subsection (d) of the very jurisdiction conferred upon them in subsections (a) and (b) of the same statute. Where arguably ambiguous, a statute must be given a common sense construction. As such, in this statute, the phrase "any civil action" and the term "claim" are both modified by the phrase "for a pension."

Three matters must be discussed with respect to this issue. *First,* there is the question of whether Wojton filed a claim with the VA (i.e., "the appropriate Federal agency"). *Second,* provided he did file an appropriate administrative claim, there is the question of whether he filed his claim with the VA in a timely manner. *Third,* there is the question, not raised by parties, of whether Wojton filed his Complaint with this Court in a timely manner.

In his Complaint, Wojton alleges that he did file a claim with the VA, pursuant to 28 U.S.C. § 2675(a). (Compl. ¶ 2.) The VA admitted to this fact. (Answer (Doc. # 9) ¶ 2.) Thus, the Court can make a finding that an administrative claim was filed. Wojton did not indicate the date of such filing, and acknowledges in his Memorandum in Opposition that the "exact date the claim was filed is unknown." (Doc. # 17 at 4, n. 1.) However, in its Motion, the VA states that "[o]n or about July 1, 1998 the Office of General Counsel forwarded an SF 95, tort claim form filed by Eugene Wojton, to the Chicago Regional Counsel Office, which received it on or about July 10, 1998." (Doc. # 15 at 1–2.) Furthermore, the VA attached a copy of a letter sent to Wojton from the Regional Counsel in Chicago acknowledging the receipt of the claim. (Doc. # 15 at Ex. B.)[5] Given this admission on the part of the VA, the Court can find that the administrative claim was filed no later than July 1, 1998.

The bulk of the parties' dispute concerns the question of whether Wojton's administrative claim was filed in a timely manner. To resolve this, the Court must inquire into whether his tort action accrued no

earlier than two years prior to the time he filed the claim.

■ As for when a tort claim accrues, *Kubrick* controls. Therein, it was settled that for purposes of a medical malpractice tort action against the Government, a claim accrues when the plaintiff becomes aware of facts which would put a reasonable person on notice of both the existence of an injury and the cause of that injury. 444 U.S. at 122–23, 100 S.Ct. 352. A plaintiff need not be aware of her legal rights, or of a "malpractice," for the limitations period clock to start running. *Id.*

■ Herein, Wojton alleges that the VA committed four distinct acts of negligence. Accordingly, the Court must address the question (or questions) of when Wojton should have known that he had been injured as a result of 1) the VA's having diagnosed him with schizophrenia; 2) the VA's having prescribed him the wrong medication; 3) the VA's failure to diagnose him with PTSD; and/or 4) the VA's failure to have prescribed him the proper medication.

Parenthetically, the Court notes the fact that Wojton *is not* suing the VA for its failure to protect him from developing PTSD in the first place. All four counts of negligence arise from acts of commission (or omission) engaged in (or not engaged in) after Wojton had returned from duty in WWII. This fact is vital to the viability of his cause of action, as will become clear when the Court addresses the VA's defense of sovereign immunity.

The VA contends that Wojton was aware that he had PTSD at least as early

---

**5.** The letter is not attached to a sworn affidavit, but given that the fact, if established, inures to Wojton's benefit, the Court finds no error in accepting it to establish the filing date. However, it acknowledges that Wojton's claim was received on July 10, *1997.* Given the statements of the parties, the Court assumes that this is a typo, and that it should read July 10, *1998.* In any event, for purposes of this Decision and Entry, lack of clarification is not material. If there is any lingering dispute as to the filing date, the parties should bring their concerns to the Court's attention at their earliest opportunity.

as February 8, 1989. (Doc. # 15 at 6.) If this were the case, Wojton's administrative claim in 1998 would not have been timely. To support this assertion, the VA points to a certified medical record of Wojton's maintained at a VA health care center in Chicago (the "West Side Center") bearing that date. (Doc. # 15 at Medical Record No. 11.) [6] This record contains a notation that Wojton was aware of the fact that he suffered from PTSD. Wojton, by contrast, claims he was not made aware of his PTSD until his visit to Dr. Reff in October of 1996, a fact which, if true, would establish that his claim was filed in a timely fashion. Additionally, Dr. Reff states that in his medical opinion, the medications prescribed to Wojton up until October of 1996 would be inconsistent with an earlier diagnosis and treatment of PTSD, a fact which bolsters the inference that Wojton had not received such a diagnosis.

For several reasons, the Court will make a preliminary finding that Wojton's cause of action is not barred by the statute of limitations. Despite the evidence adduced by the VA which tends to show that Wojton was aware that he had been diagnosed with PTSD at least as early as February 8, 1989, his and his physician's sworn statements to the contrary are sufficient to create a genuine issue of fact. When ruling on a Rule 12(b)(1) motion, the Court need not give Wojton the benefit of all favorable inferences as it would under Rule 56, *see United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.)(citing *National Life*, 922 F.2d at 325), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188 (1994). However, in this case, Plaintiff's affidavits present a strong case for inferring that he was not actually aware of his PTSD until 1996. The same is true with respect to when he obtained knowledge of the dangers of the medications he had been taking. As such, reasonable people could infer that the four counts set forth in the Complaint all accrued in October, 1996, when Wojton obtained a diagnosis from Dr. Reff.

■ Another reason for finding that Wojton's claim should not be barred by the statute of limitations is that, as he points out, even if his claim for negligence were time-barred as to the VA's original alleged misdiagnosis, on the basis of Dr. Reff's affidavit statements, Wojton would still have a claim for the VA's allegedly negligent acts of prescribing improper medication. The VA has adduced no evidence that Wojton knew, as of February of 1989 or any other time prior to 1996, that the VA had been prescribing the wrong medication. Furthermore, even if he had a subjective appreciation for his PTSD in 1989, from Dr. Reff's same statements, it could be inferred that Wojton was led to believe that the same medications he had been taking all along were appropriate for treating that illness. If this were the case, to the extent Wojton's claim is based on the negligent prescribing of medications, the statute would be tolled so long as Wojton reasonably relied on the VA physician's treatment of him. *See McDonald v. United States*, 843 F.2d 247, 248–49 (6th Cir.1988) and cases cited therein.

Of course, as has been made clear, this genuine issue goes to more than just the merits; it goes to the Court's jurisdiction over the action. It is for that reason that the VA's Motion with respect to this issue is being treated pursuant to Rule 12(b)(1). While the Court is wary of giving much weight to the VA's unsworn documents, it is equally wary of dismissing their importance outright. Accordingly, the Court's finding as to its jurisdiction is without

---

**6.** As originally submitted, the purported medical records adduced by the VA were not certified. However, the Court, by Notation Order of May 10, 2001, sustained the VA's motion to substitute certified copies of Wojton's records. (*See* Doc. # 16).

prejudice to a subsequent finding to the contrary, at or after the trial, be it to all or any portion of Wojton's claim.

With respect to how to proceed on this question, as noted in *National Life*, this Court has the authority to hold an evidentiary hearing to clarify any genuine issue about its jurisdiction. *Accord Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–77 (7th Cir.2001)(holding that when jurisdiction depends on contested facts closely linked to the merits, a district court is free to hold a preliminary hearing to resolve the dispute before proceeding to trial). However, given that this action as a whole is one to be tried to the Court, *see* 28 U.S.C. § 2402, the Court does not see much value in holding a preliminary hearing. The more prudent course is to proceed to trial, where the VA may raise anew its limitations defense to any of Wojton's four claims, should it choose to do so. *See Land v. Dollar*, 330 U.S. 731, 735 & 738–39, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) (holding that where genuine issues of material fact relate to both the merits and to the court's jurisdiction, such that the questions are inextricably linked, the court may proceed to a trial on the merits).

■ The final question with respect to the limitations defense is whether Wojton, having filed his claim in a timely manner with the VA, likewise filed his Complaint in this Court in a timely manner. 28 U.S.C. § 2675(a) states that where an agency fails to make a final disposition of a claim within six months from the date on which it is filed, it shall, *"at the option of the claimant any time thereafter,* be deemed a final denial of the claim for purposes of this section" (emphasis added). Wojton alleges that the VA failed to act on his claim. (Compl.¶ 2.) The VA admits to this fact. (Answer ¶ 2.) Whether Wojton's Complaint was filed in a timely manner turns, then, on a question of law, not fact,

namely, how the words of § 2675(a) emphasized above are to be construed.

Read literally, a failure of an agency to act on a claim subjects the Government to suit indefinitely, and, indeed, the Sixth Circuit has embraced the liberal standard that the straightforward textual reading of the statute suggests. *See Conn v. United States*, 867 F.2d 916 (6th Cir.1989). In *Conn*, the plaintiff filed a tort claim against the Federal Bureau of Prisons ("Bureau") in the district court almost four years after the expiration of the six-month period which the Bureau had, under § 2675(a), to act on his administrative claim. The district court dismissed the complaint as untimely. *Id.* at 918. On plaintiff's appeal, the Bureau argued that the district court's opinion should be affirmed on account of an implied condition of § 2675(a) that a court action must be filed within a reasonable period of time after the expiration of the six-month administrative period. *Id.* at 920. The Sixth Circuit rejected this argument and reversed on three grounds. *First,* the language of the text does not support the argument. *Second,* such a rule would leave the viability of such claims to the "ad hoc," "multifarious," and "unlimited" factual determinations of the trial courts, and defeat what is otherwise a bright line rule (of indefinite viability). *Third,* agencies always have the option of actually issuing denial letters to trigger the ensuing six-month period of limitations imposed by § 2401(b), and thus there is little unfairness to them.

Herein, assuming that July 1, 1998, was the date on which his claim was filed with the VA, the agency's deliberative period would have expired January 1, 1999. Wojton filed his Complaint on May 24, 2000. *Conn* controls, and the Court finds no limitations infirmity with respect to the timing of Wojton's filing of his Complaint in this Court.

Accordingly, the Court will overrule the VA's Motion with respect to its defense that Wojton did not comply with the statute of limitations, 28 U.S.C. § 2401(b). Said ruling is without prejudice to the argument's renewal during the trial on the merits.

The remaining three arguments for dismissal also constitute, in this context at least, "factual attacks" on the Court's jurisdiction, to wit, 1) the Government's sovereign immunity, 2) the preclusive effect of 38 U.S.C. § 511, which precludes district courts from hearing claims concerning VA benefits, and 3) Wojton's failure to exhaust his administrative remedies. None of the arguments is persuasive.

■ The sovereign immunity and § 511 preclusion defenses are essentially one and the same in this instance, and shall be considered together. The VA contends that Congress has defined a clear statutory scheme in § 511 by which veterans may seek benefits, and that to the extent a benefits claim is asserted outside the scope of this scheme, the Government is immune from suit by virtue of its sovereignty.

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir.1997). 38 U.S.C. § 511 states that the "Secretary [of the VA] shall decide all questions of law and fact" concerning the provision of veterans benefits. Appeals from such decisions can be taken to the Court of Veterans Appeals ("CVA"). 38

U.S.C. § 511(b)(4); *id.* § 7252(a). In turn, appeals from the CVA can be taken to the Federal Circuit Court of Appeals. *Id.* § 7252(c); *id.* § 7292. From there, the claim may be appealed to the Supreme Court. *Id.* § 7292(c). Because jurisdiction to review VA benefits decisions is neatly provided for in, and limited by, this statutory scheme, it is clear that district courts do not have jurisdiction to hear claims concerning benefits. *See Beamon,* 125 F.3d at 974. It follows, then, that to the extent a claimant seeks benefits from the VA by any means other than that provided for by § 511, sovereign immunity is a proper defense, and the district court would lack jurisdiction to entertain the claim.

The VA's theory is certainly neat and tidy, but, with one exception, it is inapplicable in this instance. To begin with, the FTCA is a waiver of sovereign immunity. Secondly, there is no federal law excepting the VA from FTCA liability. Indeed, the VA regulations set forth the administrative procedures for filing FTCA claims against it. *See* 14 C.F.R. § 14.600 *et seq.* Thus, it cannot be said, as the VA's Motion suggests it should, that a tort claim asserted by a veteran against the VA is merely an end run on the statutory scheme governing the disbursement of benefits. If there is any doubt on this matter, one need only perform a Westlaw or Lexis search to discover the vast number of tort claims which have been prosecuted by veterans against the VA in the regular federal court system.[7]

Most of the VA's argument on this issue goes to inapplicable facts. For example,

---

**7.** In particular, *see United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), where it was held that a veteran who was subjected to negligent treatment in a VA hospital during treatment for a war-caused injury was not barred from filing a tort claim against the Government under the FTCA. An important distinction was made of the indi-

vidual's status as a "veteran." *Id.* at 112, 75 S.Ct. 141. By contrast, active service men and women subjected to negligence during activities arising out of or incident to their service are not entitled to sue the Government under the FTCA. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

the VA argues at some length that the Court should not take jurisdiction over Wojton's claim even if the Complaint asserts a constitutional infirmity with the VA benefits regulations. (Doc. # 15 at 9–15.) Yet, as Wojton points out in his Memorandum, this entire line of argument, as with the cases cited by the VA, is irrelevant, as the Court has not been asked to address a constitutional issue.

In fact, the only relevant point raised by the VA in its argument on the preclusion and sovereign immunity issues is that courts should be wary of hearing cases that are essentially collateral attacks on the VA's exclusive authority to determine benefits issues. On this point, the Court agrees, and it is for that reason that to the extent Wojton seeks loss of statutory benefits (*see* Compl. ¶ 23(e)), whatever those may be,[8] his cause of action must be dismissed. Ordering backdated benefits would require the Court to probe deeply into the mechanics of how such benefits are calculated by the VA, something it has no authority to do. The § 511 scheme provides his sole means for obtaining such.

■ Be that as it may, loss of statutory benefits is merely one form of damages Wojton seeks. The other damages he seeks are proper, and are not barred *as a matter of law* by the § 511 scheme.[9] On the other hand, although the VA is amenable to suit in principle for the type of damages sought by Wojton, as a question of fact it must be determined whether Wojton's claim is barred as being one "in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). This is not an argument that the VA raises, but again, the sovereign immunity of the Government goes to jurisdiction, and the Court is obliged to address the pertinent law on its own as it deems necessary.

In *Feres*, the Supreme Court addressed three lower court cases in which military

---

8. At ¶ 23(e) of his Complaint, Wojton avers that he began receiving disability benefits for PTSD on June 25, 1998. The Court assumes, without concluding, that the benefits he seeks in this regard are disability benefits backdated from June 24, 1998, to the date of his original, allegedly negligent, diagnosis. Such benefits are the bailiwick of the administrative process that begins with 38 U.S.C. § 511, not this Court. Additionally, for any benefits (as opposed to damages) Wojton may be seeking as a result of the VA's alleged negligence, 38 U.S.C. § 1151 provides an administrative remedy. That section provides for benefits in the event a veteran suffers a disability in the course of obtaining "hospital care" or "medical treatment," pursuant to any law administered by the Secretary of Veterans Affairs, which is proximately caused by the negligence of attending VA physicians. Of course, the Court has no opinion on whether Wojton is entitled to such, but does note that even if he were, it would not bar his right to sue under the FTCA for other damages (although the VA would be entitled to an offset of any damages award by the amount of benefits awarded). *See Brown*, 348 U.S. at 113, 75 S.Ct. 141 (construing an earlier version of what is now 38 U.S.C. § 1151).

9. Wojton seeks the following damages: (a) Substantial loss of the pleasure and enjoyment of life; (b) Substantial economic detriment that resulted from missed opportunities to pursue an education and gainful employment and the loss of his ability to be gainfully employed; (c) The loss [of] enjoyment of his family and companionship, including a failed marriage, because of the personality changes he underwent due to the effects of the psychotropic drugs; (d) Direct substantial injury to his personality and mental health caused by the wrongfully prescribed drugs; (e) Loss of statutory benefits ...; (f) Substantial mental and emotional trauma caused by the persistent anxiety and fear due to the recurrent flashbacks of the war and shellshock; (g) Physical injury and associated pain and suffering resulting from automobile accidents he suffered while he was on improper medications prescribed by government health care providers; and (h) Other economic and non-economic losses and damages.

personnel or their legal representatives filed tort actions against the Government for injuries sustained on account of allegedly negligent acts of the military, and in the course of activities incident to the claimant's active duty. Two of the three injured parties were allegedly injured or killed as a result of medical negligence. *Id.* at 137, 71 S.Ct. 153. Construing the waiver of sovereign immunity embodied by the FTCA narrowly, the Court found that Congress did not intend for injuries that "arise out of" or are sustained "in the course of activity incident to" active service to provide grounds for tort actions against the Government. *Id.* at 146, 71 S.Ct. 153 (giving birth to the "*Feres* doctrine").

The scope of *Feres,* in particular the "incident to" language, was limited though by *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). Therein, a veteran, who had been out of the service for over five years, underwent an operation at a VA hospital for a knee injury sustained during his active duty. *Id.* at 110, 75 S.Ct. 141. During a second operation a year later on the same knee, VA medical personnel used a defective tourniquet, resulting in serious damage to the claimant's leg. *Id.* at 110–11, 75 S.Ct. 141. The Court held that *Feres* did not apply because unlike the claimants in that earlier case, the current claimant had not been on active duty when he was subjected to the negligence of the Government. *Id.* at 112, 75 S.Ct. 141. It did not matter that the primary injury for which he was being treated did in fact occur in the course of his active duty.

While the Supreme Court has often tried to clarify *Feres,* it has left *Brown* wholly intact. For example, in *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), the Court emphasized the three "broad rationales" of *Feres.* First, precluding active military personnel from suing the Government for torts arising out of or incident to their service helps preserve the "distinctively federal" character of the Government-soldier relationship. *Id.* at 689, 107 S.Ct. 2063. Given that service men and women serve all over the globe in myriad conditions, a general bar on tort suits arising out of or incident to service prevents the "fortuity of the situs of the alleged negligence to affect the liability of the Government to the serviceman." *Id.* (citation omitted). *Second,* service members have available to them numerous other administrative benefits, a fact which implies a congressional intent to make these benefits the sole source of recovery for any harm befalling a soldier during active service. *Id.*[10] *Third,* and finally, allowing such suits would require the Government to expose to the judiciary "sensitive military affairs at the expense of military discipline and effectiveness." *Id.* at 690, 107 S.Ct. 2063.

Herein, again, the Court must highlight the fact that Wojton is not suing the VA for its negligent failure to protect him from developing PTSD, an injury directly resulting from his active duty in World War II.[11] Rather, the alleged negligent

**10.** As Justice Scalia pointed out in dissent, administrative benefits are also available to veterans, yet in both *Brown* and *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Court held that the availability of those benefits does not imply that veterans may not file suit under the FTCA. 481 U.S. at 698, 107 S.Ct. 2063 (Scalia, J., dissenting). While *Brown* and *Johnson* are arguably inconsistent as a matter of logic,

that fact alone is not enough to treat *Johnson* as overruling *Brown.* The inconsistency is for Congress to address, or the Supreme Court to clarify, as either sees fit.

**11.** Technically, 28 U.S.C. § 2680(j) excepts the Government from liability for any injuries caused directly by "the combatant activities of the military ... during time of war." The *Feres* doctrine is therefore not concerned with

acts stem from acts of the Government which occurred after his return from service. While his injuries relate to his service in World War II, but for the negligence of the VA (assuming *arguendo* it can be shown), his life might have been much different. In other words, if the allegations prove true, the VA's actions created injuries separate and distinct from the PTSD itself.

Notwithstanding the fact that Wojton's injury is one of the mind and not the body, the facts herein present a carbon copy of the facts of *Brown.* Wojton's claim does not touch upon the three rationales of *Feres,* as emphasized in *Johnson,* all of which flow from a preliminary factual finding that the claimant was on active duty when subjected to the negligence of the military. Guidance can be found in the following passage in *Brown:*

> The present case is, in our view, governed by *Brooks,*[12] not by *Feres.* The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. The injury occurred after his discharge, while he enjoyed civilian status. The damages resulted from a defective tourniquet applied in a veterans' hospital. Respondent was there, of course, because he had been in the service and because he had received an injury in the service. And the casual relation of the injury to the service was sufficient to bring the claim under the Veterans Act. But, unlike the claims in the *Feres* case, this one is not foreign to the broad pattern of liability which the United States undertook by the Torts Claim Act.

348 U.S. at 112, 75 S.Ct. 141. Herein, discovery on the truth of the allegations that the VA was negligent will not require a probe into classified military information, nor subject the propriety of military discipline to the hindsight opinion of the Court. The Court has not found any authority calling into question the vitality of *Brown,* and it is satisfied that herein, *Brown,* not *Feres,* controls.[13]

There is a caveat to the Court's conclusion, though, which, as with the VA's statute of limitations defense, requires a further finding of fact in order to crystalize the issue. Based on the record, the Court cannot be certain of Wojton's military status when he was first diagnosed at the VAMC. On this point, Wojton's Complaint and affidavit are inconsistent. In his Complaint, Wojton avers that he sought treat-

---

such, but is, rather, concerned with non-combatant injuries sustained at any time during a soldier's service, whether during a time of war or not.

**12.** 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949).

**13.** The active duty/veteran dichotomy is highlighted further by the following statement:

In the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.'

The only deviation from this dichotomy is the recognition that those being trained for future military service and who are treated for injuries sustained as part of such training, are treated as if they were on active duty, given that they are already subject to military discipline. *See, e.g., Brown v. United States,* 151 F.3d 800 (8th Cir.1998)(finding that a senior ROTC cadet was barred under *Feres* doctrine from suing the Government for negligence related to injuries sustained during ROTC training activities); *Miller v. United States,* 42 F.3d 297 (5th Cir.1995)(same with respect to a Naval Academy midshipman).

*United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)(quoting *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963)(quoting *Brown,* 348 U.S. at 112, 75 S.Ct. 141 (1954))).

ment at a Chicago VAMC in 1946 for anxiety. (Compl.¶ 10.) He further avers that he was treated wrongfully for schizophrenia beginning that year. (*Id.*) Nowhere does he aver whether his military status at that time was active or not. Further complicating the issue is the statement in his affidavit that he "began" to receive treatment for a "nervous condition" in 1947. (Wojton Aff. ¶ 4.) There is no mention in his affidavit of having received treatment in 1946. What is more, he states in his affidavit that he was not diagnosed with schizophrenia until "sometime in the early 1950s," another statement which conflicts with the aversions contained in the Complaint.

The bottom line to this is that the Court cannot finally conclude that *Brown,* as opposed to *Feres,* controls until it is certain of two details: 1) the date on which Wojton was discharged from the military, such that he was no longer in active service; and 2) the date (or dates) on which the VA's alleged acts of negligence which give rise to his cause of action first occurred, i.e., the date on which he was "misdiagnosed."

The Court raises this issue on its own because, again, it goes to the jurisdictional issue of sovereign immunity. Accordingly, Wojton is directed to submit within 10 days from date admissible evidence of these facts in the form of an affidavit. In the alternative, either of these facts are ones to which the VA may stipulate.

For the moment, the Court will OVERRULE the VA's Motion with respect to the issues of sovereign immunity and § 511 preclusion. This ruling is without prejudice to renewal should Wojton be unable to establish that he was not in active service at the time of the first alleged negligent acts committed by the VA.[14]

Regarding the exhaustion doctrine defense, where administrative exhaustion is prescribed by statute as a prerequisite to the district court's jurisdiction, as is the case with the FTCA (28 U.S.C. § 2675(a)), a failure to exhaust precludes the court from taking jurisdiction of the case. *See Singleton v. United States,* 277 F.3d 864, 872 (6th Cir.2002)(stating that "we have held that the failure to file a timely administrative claim under the FTCA bars federal jurisdiction")(citing *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir.1982)); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed.1990).

Herein, the VA argues in its Motion that Wojton's Complaint should be dismissed on the ground that he failed to exhaust his administrative remedies. It proffers merely a theoretical argument, and does not point out with particularity the facts on which it basis that argument. Having already admitted to the fact that Wojton filed an administrative claim, as well as to the fact that the VA has yet to act upon the claim, the Court cannot find that Wojton has failed to exhaust the administrative remedies required by law. This defense is therefore of no merit.

On this ground, the VA's Motion is OVERRULED.

### III. *Conclusion*

For the reasons stated, the VA's Motion, construed in all respects as one to dismiss for lack of subject matter jurisdiction, is SUSTAINED, to the extent Wojton seeks any benefits of any sort, including any calculation of damages which may be regarded as an estimate of "lost benefits." The Motion is OVERRULED in all other

---

**14.** The Court, as of yet, has had no need to consider how the *Feres/Brown* dichotomy would apply to a scenario in which ongoing negligent conduct had its incipience during the claimant's active service but continued past the time of his or her discharge.

respects, conditioned upon Wojton submitting within 10 days from date: (a) facts, as would be admissible at trial, establishing when he was discharged from active military duty; and (b) facts, as would be admissible at trial, establishing the date or dates on which the alleged acts giving rise to the four counts pled in his Complaint took place or began to take place. Wojton may satisfy his burden as to each matter with a stipulation from the VA or by affidavit in comportment with the dictates of Rule 56(e).

Counsel listed below will take note that a telephone conference call will be held, beginning at 8:15 a.m. on Tuesday, March 12, 2002, to discuss the viability of the April 1, 2002, trial date.